**STRUCTURAL PANELS, INC., Plaintiff,**

v.

**TEXAS ALUMINUM INDUSTRIES, INC., Defendant.**

No. 92–415–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 11, 1993.

Jack E. Dominik, Dominik, Stein, Saccocio, Reese, Colitz & Van Der Wall, Miami Lakes, FL, Stefan Vaughn Stein, Dominik, Stein, Saccocio, Colitz & Van Der Wall, Tampa, FL, for plaintiff.

Frank R. Jakes, Brian B. Evans, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Lester L. Hewitt, Richard D. Fladung, Pravel, Gambrell, Hewitt, Kimball & Krieger, Houston, TX, for defendant.

### ORDER

KOVACHEVICH, District Judge.

 THIS CAUSE is before the Court on a report and recommendation issued by Magistrate Judge Elizabeth A. Jenkins on August 11, 1992 (Dkt. 37). The Court has independently reviewed the pleadings, the report and recommendation, and the objec-

tions of each party. The Court concurs with the Magistrate.

Accordingly, it is ORDERED that the report and recommendation dated August 11, 1992 (Dkt. 37) be ADOPTED and that:

(1) Defendant's Emergency Motion To Dismiss Or, In The Alternative, To Transfer Defendant's Present Action To The Pending First–Filed Texas Action (Dkt. 13) and Defendant's Motion To Dismiss For Lack Of Proper Jurisdiction (Dkt. 15) be GRANTED to the extent that this action be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a) and;

(2) Defendant's Emergency Motion For Postponement Of Preliminary Injunction Hearing (Dkt. 10) and Motion For Postponement And Conversion Of Preliminary Injunction Hearing Or, In The Alternative, Motion For Consolidation Of Hearing With Trial On The Merits (Dkt. 11) be DENIED as moot.

DONE and ORDERED.

### REPORT AND RECOMMENDATION

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of defendant Texas Aluminum Industries, Inc.'s ("TAI") Emergency Motion For Postponement Of Preliminary Injunction Hearing (Dkt. 10), Defendant's Motion For Postponement And Conversion Of Preliminary Injunction Hearing Or, In The Alternative, Motion For Consolidation Of Hearing With Trial On The Merits (Dkt. 11), Defendant's Emergency Motion To Dismiss Or, In The Alternative, To Transfer Defendant's Present Action To The Pending First–Filed Texas Action (Dkt. 13) and Defendant's Motion To Dismiss For Lack of Proper Jurisdiction. (Dkt. 15)[1] A hearing was held regarding these motions on May 28, 1992.

### I

Plaintiff's complaint, filed on March 27, 1992, alleges patent infringement of United States Patents No. 4,769,963 ("963 Patent") and No. 5,086,599 ("599 Patent") pursuant to

---

1. These motions were referred to the undersigned by the District Judge for a report and

recommendation. *See* Local Rules 6.01(b) and 6.01(c), M.D.Fla.

Title 28, United States Code, section 1338(a). These patents relate to construction panels used for enclosed areas, such as patio enclosures.

A prior declaratory judgment action relating to the 963 Patent, *Texas Aluminum Industries, Inc. v. Structural Panels, Inc.*, Case No. H–92–888, was filed by TAI in the United States District Court for the Southern District of Texas, Houston Division, on March 20, 1992. This complaint was amended on April 1, 1992, to include the alleged infringement of the 599 Patent.

TAI has filed a motion to dismiss, or in the alternative, to transfer this action to the Southern District of Texas. TAI alleges that it has insufficient minimum contacts with the State of Florida for this Court to exercise personal jurisdiction over it and, therefore, this action should be dismissed. Alternatively, TAI requests that this action be transferred to the Southern District of Texas, which has prior jurisdiction over the parties and issues in this matter and because proof of any infringing activities by TAI is in Texas.

### Findings of Fact [2]

(1) Plaintiff Structural Panels, Inc. ("SPI") is Florida corporation. SPI's president and chief executive officer, Steven C. Meyerson, is the named inventor of the 963 Patent and the 599 Patent. Mr. Meyerson has assigned these patents to SPI.

(2) SPI commenced manufacturing panels pursuant to the 963 Patent in August 1987. SPI switched from the 963 Patent panel construction to the 599 Patent panel construction in June 1990.

(3) TAI, a Texas corporation, purchased panels from 1987 through 1992 from both SPI and SPI's licensee, Elite Aluminum, Inc. ("Elite"). Orders for these panels were placed by telephone by a purchasing agent, and the panels were shipped to Texas by common carrier. TAI paid the shipping fee when the panels arrived in Houston, Texas.

Michael Christopher, TAI's Executive Vice–President, states TAI's purchases from SPI totalled approximately $451,688.58 from July 1, 1987 through July 1, 1991 and TAI's purchases of Elite panel products totalled approximately $1,034,551.51 from August 24, 1987 through June 30, 1992.

(4) During 1990 and early 1991, TAI sought a license for the 963 patent from SPI. Licensing negotiations between the parties were unsuccessful.

(5) In February 1991, TAI began designing the alleged infringing panel. TAI purchased the machine necessary to manufacture the alleged infringing panels from a Florida company, FLC Machine Co. ("FLC"), in middle to late 1991, at a cost of approximately $80,000. This machine is a system for cutting and forming aluminum panel edges which was built by FLC pursuant to designs provided by TAI. The machine was delivered to TAI in Texas.

(6) TAI first sold the alleged infringing panels in early 1992. These panels are manufactured in Texas and are not sold in the State of Florida.

(7) TAI is not licensed by the State of Florida and has no employees, officers, property, telephone number or mailing address in Florida. TAI has sporadically advertised in a nationwide publication called "Builder's Magazine"; however, this advertising does not encompass a region which includes the State of Florida. Additionally, this advertising involves products which are unrelated to the alleged infringing panels. TAI limits its advertising to states where its warehouses are located and has never directed advertising to the State of Florida.

(8) TAI manufactures and sells patio enclosures, carports, patio covers, screen enclosures, and other home improvement products. TAI has warehouse space in eighteen locations in ten states, but does not have an office or warehouse in Florida. TAI sells and ships its products by truck to indepen-

---

**2.** These facts are contained in the pleadings of record and the affidavits and declarations of Michael Christopher, Executive Vice-president of TAI (Dkt.12, Dkt.16, Ex.A and Dkt.35), Steven Myerson, President of SPI (Dkt.4 and Dkt.26,

Exhibit.), Ronald Brown, Regional Sales Manager for TAI (Dkt.28, Ex.C) and Frederick Froelich, Sr., the President of FLC Machine, Inc. (Dkt.28, Ex.E)

dent home improvement dealers and general contractors at TAI's warehouses for use outside of Florida.

(9) TAI has sold some items in Florida which are not related to the alleged infringing panels. TAI sold commercial aluminum covers for use in building-covered walkways at a Florida school in 1990 and 1991. These sales totaled $83,664.00, or 0.167% of TAI's gross revenue for those years. TAI also sold a glass garden display to Elite in 1991, at Elite's request. This sale totalled approximately $2000.00, or 0.008% of TAI's gross revenues for 1991.

(10) In February 1992, Ronald Brown, TAI's Southeast Regional Sales Manager, met with Rod Hershberger of Vinyl Tech of Florida ("Vinyl Tech") in Florida. Mr. Brown had told Mr. Hershberger during a conversation in late January or early February of 1992 that he would be in Florida to visit his family and also to investigate a possible bid on a project in Bradenton, Florida.[3] Mr. Hershberger requested that Mr. Brown stop by Vinyl Tech at some point while Mr. Brown was in Florida and that he bring a sample of the structural roof panel which TAI had begun manufacturing with him.

(11) Mr. Brown left a one (1) foot by one (1) foot sample of the alleged infringing panel with Mr. Hershberger on or about February 5, 1992. The structural roof panels which TAI normally produces and installs range from four (4) feet by ten (10) feet to four (4) feet by twenty (20) feet.

(12) On February 7, 1992, Mr. Brown notified Mr. Hershberger that TAI was not able to sell structural roof panels for the prices which were available in the Florida market. Mr. Hershberger told Mr. Brown that the sample Mr. Brown had provided would be returned, but it was not. TAI states this sample is the sample which is now in SPI's possession, and SPI has not disputed this contention. This is the only sample of TAI's alleged infringing panel which SPI has demonstrated is in the State of Florida. SPI has not set forth any other facts regarding spe-

cific acts of alleged infringement by TAI in the State of Florida.

(13) TAI has been a distributor for Vinyl Tech in Texas in connection with vinyl windows. TAI states it was unaware that Vinyl Tech was a licensee of SPI when Mr. Brown left a sample of the alleged infringing panel.

(14) On March 6, 1992, SPI sent a letter to TAI which alleged that TAI's panels infringed upon the 963 Patent. TAI filed a declaratory judgment action relating to the 963 Patent, *Texas Aluminum Industries, Inc. v. Structural Panels, Inc.*, Case No. H–92–888, in the United States District Court for the Southern District of Texas, Houston Division ("the Texas case") on March 20, 1992.

(15) On March 27, 1992, SPI filed the instant action, alleging that TAI's panels infringe upon the 963 Patent, as well as the 599 Patent.

(16) TAI thereafter filed an amended complaint in the Texas case on April 1, 1992, seeking a declaration of non-infringement and/or invalidity of the 599 Patent in addition to the 963 Patent.

*Conclusions of Law*

I. Personal Jurisdiction

 A defense of lack of jurisdiction may, at the option of the defendant, be made by motion. *See* Rule 12(b), Fed.R.Civ.P. Where the court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the defendant by presenting "sufficient evidence to defeat a motion for directed verdict." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990). The court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by the defendant's affidavits. *Id.* at 855. Where there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

---

**3.** TAI never bid on the Bradenton Airport project, as the specifications called for materials which TAI does not produce.

■ Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings. *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 586 (M.D.Fla.1991). If the defendant sufficiently challenges plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint. *Id.* at 586.

■ In order to determine whether the court may exercise personal jurisdiction over a nonresident defendant, the court must determine: (1) whether the state long-arm statute permits assertion of jurisdiction; and (2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *See Cable/Home Communication Corp.*, 902 F.2d at 855. (citations omitted).

### *State Long–Arm Statute*

■ When jurisdiction is based upon a federal question arising under a statute that is silent regarding service of process, Rule 4(e), Fed.R.Civ.P., requires that the assertion of jurisdiction be determined by the state long-arm statute. *Id.* at 855. Since there is no service of process provision for sections 1331 and 1338 of Title 28, United States Code[4], the court must examine the state long-arm statute to determine the amenability of TAI to Florida jurisdiction. *See Id.* at 855.

■ In examining the Florida long-arm statute, the court must construe the statute as would the Florida Supreme Court, since the reach of the statute is a question of state law. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir.1983). Florida's long-arm

statute must be strictly construed, and the burden of proving facts which justify use of the statute is on the plaintiff. *Id.* at 891.

Florida Statute Section 48.193 provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla.Stat. § 48.193.

The uncontroverted evidence in the affidavits shows that TAI is not licensed by the State of Florida and has no employees, officers, property, telephone number or mailing address in Florida. Additionally, TAI limits

---

4. Section 1331 provides that the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Section 1338(a) provides, in relevant part, that the

district courts have jurisdiction of any civil actions arising under any Acts of Congress relating to patents, plant variety protection, copyrights and trademarks. *See* 28 U.S.C. § 1338(a).

its advertising to states where its warehouses are located and has never directed advertising to the State of Florida.

While SPI's complaint alleges that TAI was "offering the panels for sale and distributing samples in the State of Florida", Ron Brown's affidavit states he brought a sample of TAI's panel with him to Florida when he visited his family at Mr. Hershberger's request, and that he specifically told Mr. Hershberger that TAI could not sell its panels in the State of Florida at the market prices which were available there. Moreover, TAI's affidavits indicate that the alleged infringing products are manufactured in Texas and sold outside of Florida.

■ In light of the affidavits submitted by TAI, the burden shifts to plaintiff to affirmatively support its jurisdictional allegations in the complaint. *See Prentice,* 779 F.Supp. at 586. Plaintiff has failed to set forth specific facts which indicate that TAI has manufactured, marketed or sold the alleged infringing product in Florida or negotiated with any parties to do the same, that TAI has solicited business or advertised in Florida regarding the alleged infringing panels, or that the cause of action otherwise arose from the operation of a business by TAI in the state of Florida. Therefore, personal jurisdiction over TAI may not be asserted under Fla.Stat. § 48.193(1)(a). *See generally Limardo v. Corporacion Intercontinental,* 590 F.Supp. 1109, 1111 (S.D.Fla. 1984) (section 48.193(1)(a) permits jurisdiction over a nonresident corporation only where the claims arise out of business transacted in the state).

■ Jurisdiction also does not exist under section 48.193(1)(f), as this section does not permit jurisdiction over nonresidents for acts arising outside the state which cause financial injury within the state, in the absence of personal injury or property damage. *Sun Bank, N.A. v. E.F. Hutton & Co.,* 926 F.2d 1030, 1033 (11th Cir.1991), *citing, Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.,* 511 So.2d 992, 993–994 (Fla.1987).

■ Subsection (1)(b) permits jurisdiction where the nonresident commits a tortious act within this state. *See* 48.193(1)(b). In *Cal-mar Industries, Inc. v. Wilson Research Corp.,* 442 F.Supp. 796 (S.D.Fla.1977), the court found that *in personam* jurisdiction existed under a predecessor Florida long-arm statute provision regarding the commission of tortious acts in the state where allegations that the nonresident defendant was shipping samples of its product to a Florida corporation gave rise to a claim of unauthorized commercial use of pictures of one of the plaintiffs and one of the plaintiffs' products. The court stated that the "alleged shipping of samples of a product to a Florida corporation indicates that the defendant was reasonably aware that such samples would enter the limits of this state and that they would be utilized by a commercial entity herein." *Id.* at 799.

*Cal-mar Industries, Inc.* is distinguishable because in the instant case, Mr. Brown's affidavit indicates that while he gave a sample of the alleged infringing panel to Mr. Hershberger at Mr. Hershberger's request, he told Mr. Hershberger that TAI could not sell its panels in the State of Florida for the prices which were available in the Florida market. Mr. Hershberger also told Mr. Brown that the sample would be returned. Thus, there is insufficient evidence that TAI intended that its product be utilized in the State of Florida, or that TAI was reasonably aware that use in Florida would occur.

SPI has submitted insufficient evidence that TAI has manufactured, marketed or sold the alleged infringing product in Florida or negotiated with any parties to do the same, that TAI has solicited business or advertised in Florida regarding the alleged infringing panels, or that TAI has otherwise committed a tortious act within the state. Accordingly, personal jurisdiction is not appropriate under Section 48.193(1)(b).

■ Section 48.193(2) permits the court to exercise personal jurisdiction, regardless of whether or not the claim arises from defendant's activity within the state, if the defendant is engaged in substantial and not isolated activity within this state. *See* Fla. Stat. § 48.193(2).

In addition to the previously discussed meeting with Mr. Hershberger, the affidavits

and pleadings of record indicate that the contacts which TAI has had with the state of Florida are: (1) sales of unrelated TAI products which amounted to less than 0.2% of TAI's gross revenue on two occasions in 1990 and 1991; (2) the purchase of $1,034,551.51 in SPI and Elite panel products from August 1987 through June 1992; and (3) the purchase of a machine for manufacturing the alleged infringing product from FLC in middle to late 1991.

Purchases and two sales of unrelated products in the state are insufficient to permit the court to exercise general jurisdiction over TAI under section 48.193(2). *See generally Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984) (mere purchases in forum state are insufficient to warrant exercise of general jurisdiction over a nonresident defendant); *Prentice,* 779 F.Supp. at 584 (under section 49.193(2), courts have not "evince[d] any willingness or rationale to find solicitation activities alone sufficient grounds for the assertion of general jurisdiction."). *Compare Noury v. Vitek Mfg. Co.,* 730 F.Supp. 1573 (S.D.Fla.1990) (defendants' activities sufficient for personal jurisdiction under 48.193(2) where defendants took telephone orders from Florida since 1983 and shipped products directly to Florida in response to those orders, defendants' products were used by doctors and hospitals in Florida on a regular basis, defendants advertised in national trade journals which defendants knew were circulated in Florida, and defendants conducted regular business conferences and conventions in Florida at which they distributed brochures).

For the foregoing reasons, SPI has failed to meet its burden of demonstrating specific facts which justify the exercise of personal jurisdiction over TAI pursuant to Florida's long-arm statute.

### Minimum Contacts

■ Even if the court could properly exercise jurisdiction pursuant to Florida's long-arm statute, there are insufficient "minimum contacts" between TAI and Florida to ensure

that maintenance of the suit does not offend "traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[5]

■ The court may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to the forum state and the alleged injury to the forum resident arises out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). The nonresident's activities and connection with the forum state must be such that the defendant would "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ TAI's activities cannot be considered as "purposefully directed" to the State of Florida such that it would expect to be haled into court in Florida. TAI does not sell the alleged infringing product in Florida. Although Mr. Brown brought one sample into Florida at the request of Mr. Hershberger, there is no indication that TAI designed the product for the Florida market, advertised it in the Florida market, or established marketing channels for the product in Florida; in fact, TAI affirmatively declined to sell the product in Florida. *See generally Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (the mere placement of a product in the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state; additional conduct such as advertising or marketing the product in the forum state is necessary).

■ SPI emphasizes the large volume of purchases of SPI and Elite panel products by TAI over the last five years to support its argument that sufficient minimum contacts exist between TAI and Florida. However, mere purchases, even if they occur at regular intervals, are an insufficient basis for exer-

---

**5.** Compliance with Florida's long-arm statute and determining federal constitutional minimum contacts are discrete analyses. *See Cable/Home Communication Corp.,* 902 F.2d at 856.

cise of personal jurisdiction over nonresident defendants where the cause of action does not arise out of those purchases. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 417, 104 S.Ct. at 1873–74. SPI's cause of action relates to TAI's manufacturing and sale of a product which allegedly infringes upon patents assigned to SPI; it does not arise out of the purchases of the SPI and Elite panels by TAI.

▮ Even when the cause of action does not arise out of the nonresident's activities with the forum state, due process is not offended by subjecting the defendant to *in personam* jurisdiction where there are sufficient contacts between the nonresident defendant and the forum. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–415, 104 S.Ct. at 1872. However, general jurisdiction requires substantial or "continuous and systematic" contacts with the forum in order to comport with due process. *Williams Electric Co. v. Honeywell, Inc.,* 854 F.2d 389, 392 n. 2 (11th Cir.1988).

▮ In addition to mere purchases which do not satisfy due process requirements under *Helicopteros,* the record evidence shows that TAI has made sporadic sales of unrelated products in Florida on two occasions and that Mr. Brown left one sample of the alleged infringing product in Florida. These contacts are not "continuous and systematic". Therefore, the court may not exercise general jurisdiction over TAI.

## II. Comity Considerations

▮ In addition to lack of personal jurisdiction, principles of comity suggest that the Southern District of Texas should resolve this dispute, as it was the first court to obtain jurisdiction over these parties and issues. "In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982).

In *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir.1971), the former Fifth Circuit addressed a case which is similar to the instant case. In *Mann,* Party A filed a declaratory action in New York, seeking a declaration that Party A was not infringing upon Party B's patent, or alternatively, that the patent was invalid. Party B then filed an infringement action in Texas on the same patent and requested that the New York court transfer the declaratory judgment action to Texas. The court refused and enjoined Party B from proceeding in Texas.

Party B subsequently filed another action in Texas for infringement of a related patent. The Texas court enjoined Party A from proceeding in New York.

The Fifth Circuit held that while the Texas court properly temporarily enjoined Party A from proceeding in New York, since the action pertaining to the related patent was initially filed in Texas, jurisdiction in Texas should not continue because litigation of the two patents would involve much of the same evidence and the New York court had already enjoined Party B from proceeding in Texas. *Id.* at 407–408.

Since the same issues are raised in both of these cases and the Southern District of Texas was initially seized of the controversy, the Southern District of Texas should retain jurisdiction.

## III. Transfer of This Case To Texas

▮ Title 28, United States Code, section 1400(b) provides that venue in a patent infringement case properly lies in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C. § 1400(b). Historically, a corporation's place of residence was its state of incorporation for purposes of 28 U.S.C. § 1400(b). *Toombs v. Goss,* 768 F.Supp. 62, 63 (W.D.N.Y.1991). However, Congress amended 28 U.S.C. § 1391(c) in 1988 such that venue in a patent infringement action now includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991).

▮ Venue in Florida would not exist under any of these tests, as TAI is not

incorporated in Florida, the alleged infringing activities occurred outside of Florida and TAI has no regular and established place of business in Florida, and Florida cannot exercise personal jurisdiction over TAI. Conversely, venue would be proper in the Southern District of Texas under 28 U.S.C. §§ 1391(c), 1400(b).

 The court may transfer venue pursuant to 28 U.S.C. § 1406 even if venue is improper and personal jurisdiction is lacking in Florida. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 464–467, 82 S.Ct. 913, 914–16, 8 L.Ed.2d 39 (1962) (where venue was improperly laid as to two of the defendants and the court could not assert personal jurisdiction over them, the court properly transferred the case pursuant to section 1406 to another district where venue was proper and personal jurisdiction could be asserted over the defendants). *See also generally Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 992 n. 16 (11th Cir.1982) (a court lacking personal jurisdiction of the defendant may transfer a case pursuant to 28 U.S.C. §§ 1404(a), 1406(a)); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1107 (5th Cir.1981) (a transfer to a district in which personal jurisdiction over the defendant can be obtained may be made pursuant to 28 U.S.C. §§ 1404(a), 1406(a)).

 It is in the interests of justice to transfer this case to the Southern District of Texas because of the related litigation involving the parties. Transfer will result in more efficient pretrial discovery, the avoidance of duplicative litigation and inconsistent results, and will also save time and money for the parties. Additionally, the alleged infringing activities occurred in Texas and proof of the same can be obtained more easily in Texas.

Since venue is proper in the Southern District of Texas and personal jurisdiction can be obtained over the defendant in Texas, the Court should transfer this case to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a).[6]

Accordingly, TAI's Emergency Motion For Postponement Of Preliminary Injunction Hearing (Dkt.10) and Motion For Postponement And Conversion Of Preliminary Injunction Hearing Or, In The Alternative, Motion For Consolidation Of Hearing With Trial On The Merits (Dkt.11) should be denied as moot.

It is, therefore, RECOMMENDED that:

(1) that Defendant's Emergency Motion To Dismiss Or, In The Alternative, To Transfer Defendant's Present Action To The Pending First–Filed Texas Action (Dkt.13) and Defendant's Motion To Dismiss For Lack of Proper Jurisdiction (Dkt. 15) be GRANTED to the extent that this action be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a);

(2) TAI's Emergency Motion For Postponement Of Preliminary Injunction Hearing (Dkt.10) and Motion For Postponement And Conversion Of Preliminary Injunction Hearing Or, In The Alternative, Motion For Consolidation Of Hearing With Trial On The Merits (Dkt.11) be DENIED AS MOOT;

Dated: August 11th, 1992.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

---

**6.** "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).