**Jeong Min KIM and Unkyoung Kim, Plaintiffs,**

v.

**Don C. KEENAN, Charles H. Allen, Karen D. Farley, and Charles H. Allen, P.C. d/b/a Keenan Firm and/or Keenan Law Firm, and, D.C. Keenan & Associates, P.C. d/b/a/ Keenan Firm and/or Keenan Law Firm, Defendants.**

**No. 99–1416–CIV–T–17F.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 3, 1999.

Hugh Nilsen Smith, Jeremy E. Slusher, Smith & Fuller, P.A., Tampa, FL, for Jeong Min Kim, Unkyoung Kim, plaintiffs.

Frank H. Gassler, Gayle Wrede Kirkpatrick, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Don C. Keenan, Charles H. Allen, Karen D. Farley, Charles H. Allen, PC dba Keenan Firm dba Keenan Law Firm, D.C. Keenan & Associates, P.C. dba Keenan Firm dba Keenan Law Firm, defendants.

## ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, MOTION TO STRIKE

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction, or, in the Alternative, Motion to Strike (Dkt.3, 8). Defendants filed supporting affidavits

subsequent to their original motion (Dkts.9–11). Plaintiffs have filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Strike (Dkts.12–16). Plaintiffs have also filed supplemental information regarding their Memoranda of Law (Dkt.17).

## STANDARD OF REVIEW

The Defendants' filing consists of three motions: (1) Motion to Dismiss for Lack of Personal Jurisdiction; (2) Motion to Dismiss for Failure to State a Cause of Action; and (3) Motion to Strike. Each motion requires the application of a specialized standard of review to the facts. The applicable standards are set forth below.

■ In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits. See Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir.1990). Where there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. See id. Once plaintiff pleads sufficient material facts to form a basis for personal jurisdiction, the burden shifts to defendants to challenge plaintiff's allegations by affidavits or other pleadings. See Prentice v. Prentice Colour, Inc., 779 F.Supp. 578, 586 (M.D.Fla.1991). If defendants sufficiently challenge plaintiff's assertions, then plaintiff must affirmatively support his or her jurisdictional allegations, and may not merely rely upon the factual allegations set forth in the complaint. See id. at 586.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint to determine whether it sets forth sufficient allegations to establish a claim for relief. Under Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a district court should not dismiss a complaint for failure to state a claim solely on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." Additionally, when deciding a motion to dismiss, a court must accept the truthfulness of well-pleaded facts and resolve them in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); see also Beck v. Deloitte et al., 144 F.3d 732, 735–36 (11th Cir.1998)(quoting St. Joseph's Hosp. Inc. v. Hospital Corp. of America, et al., 795 F.2d 948 (11th Cir.1986)).

Rule 12(f) of the Federal Rules of Civil Procedure states that "a Court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter." Additionally, a motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." See Seibel v. Society Lease, Inc., 969 F.Supp. 713, 715 (M.D.Fla.1997).

## BACKGROUND

The following allegations, taken from the Complaint and its attached exhibits, are considered true for the present purpose of deciding whether to dismiss Plaintiffs' Complaint. See Beck, 144 F.3d at 735.

On May 27, 1996, Plaintiffs Jeong Min Kim and Unkyoung Kim (James and Jessica Kim) were involved in an accident on I–75, near Valdosta, Georgia. While traveling southbound on I–75, a vehicle driven by a third party crossed the median and struck the van that Plaintiffs were driving. The impact caused Plaintiffs' vehicle to run off the road and roll over, thereby seriously injuring James Kim.

In their subsequent lawsuit, Plaintiffs alleged that the seriousness of the accident was a result of the Georgia Department of Transportation's (Georgia DOT) failure to place a guardrail where Plaintiffs' vehicle exited the roadway. To pursue this lawsuit, Plaintiffs consulted Florida attorney Patrick Dekle who in turn informed Georgia Attorney Defendants Don Keenan, Charles Allen, Karen Farley, and Charles Allen of Plaintiffs' possible cause of action.

Upon accepting representation of Plaintiffs, Defendants contracted with Dekle under Florida law to provide co-counsel in Florida. On approximately December 31, 1996, Defendants filed suit on behalf of James Kim against the Georgia DOT. However, under the Georgia Tort Claims Act, notice of a claim must be given in writing within twelve months from the discovery of the loss. On January 15, 1997, the Georgia DOT raised "failure to serve the requisite notice as required by the Act" in its "Special Appearance Answer." (Compl.¶ 25.) Defendants never filed suit on behalf of Plaintiff Jessica Kim.

On February 13, 1997, Don Keenan, Charles Allen, and Karen Farley met to discuss responding to the Georgia DOT's "Special Appearance Answer." During this meeting it was determined that no answer was required. The Georgia DOT filed a Motion to Dismiss and, on January 16, 1998, Plaintiffs' Complaint was dismissed. As the time period for compliance with the Act had already expired, the Complaint was effectively dismissed with prejudice.

Plaintiffs allege that "[h]ad the Defendants complied with the Act and otherwise filed an appropriate complaint on behalf of James and Jessica Kim, the underlying cause of action would not have been dismissed with prejudice and James and Jessica Kim would have recovered a substantial judgement against the Georgia DOT." (Compl.¶ 30.) Moreover, the actions of the Defendants "amounted to willful and/or wanton misconduct" and "constitute gross negligence." (Compl.¶ 31.) In sum, Plaintiffs assert that Defendants committed both professional negligence and breach of contract in their obligations to Plaintiffs.

### ANALYSIS

In their Motion to Dismiss, Defendants first allege that this Court does not have personal jurisdiction over Defendants. Second, Defendants move to dismiss Plaintiffs' Complaint on the grounds that it does not state a cause of action upon which relief can be granted. Third, Defendants move to strike various portions of Plaintiffs' Complaint under Fed.R.Civ.P. 12(f). The Court will address each of these issues in the order in which they are presented.

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants' first contention is that this Court does not have personal jurisdiction over Defendants. Defendants state that personal jurisdiction does not exist under either Florida's long-arm statute or the Due Process Clause of the Fourteenth Amendment. By providing a meritorious challenge to jurisdiction by their Motion and affidavits, Defendants attempt to shift the burden of proving personal jurisdiction to Plaintiffs. *See Black v. Bryant*, 905 F.Supp. 1046, 1051 (M.D.Fla.1995). In response, Plaintiffs assert that personal jurisdiction is proper with this Court.

In order to establish personal jurisdiction with this Court, Plaintiffs' Complaint must pass the two-pronged test used in the Eleven Circuit. *See Scott v. Plaques Unlimited, Inc.*, 46 F.Supp.2d 1287, 1291–92 (M.D.Fla.1999)(citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir.1996)). First, Florida's long-arm statute must provide a basis for personal jurisdiction. *See id.* If this requirement is met, the second prong necessitates sufficient minimum contacts between Defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *See id.; see also Madara v. Hall*, 916 F.2d 1510, 1515–16 (11th Cir.1990)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### A. Florida's Long–Arm Statute

In their Motion, Defendants maintain that the exclusivity of their actions in Georgia prohibits the Court from finding personal jurisdiction under the Florida long-arm statute. Plaintiffs respond that Defendants have established sufficient con-

tacts with Florida to comport with the Eleventh Circuit's interpretation of sections 48.1939(1)(a), (b), and (f)(1). *See* Fla. Stat. Ann. § 48.193 (West 1999).

Florida's long-arm statute is set forth under Fla. Stat. Ann. § 48.193 (West 1999). It reads, in part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this State for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state

(b) Committing a tortious act within this state...

...

... (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this State, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state.

*Id.*

Plaintiffs base personal jurisdiction over Defendants primarily on Fla. Stat. Ann. § 48.193(1)(b) (West 1999), which permits jurisdiction based on tortious conduct. However, Defendants state that Plaintiffs do not allege in their Complaint that Defendants committed a tortious act within Florida. Rather, Defendants assert that the alleged malpractice and breach of contract occurred in Georgia during the representation of Plaintiffs in a Georgia lawsuit.

■ Because the Florida long-arm statute is governed by state law, federal courts are required to construe it as would the Florida Supreme Court. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir.1998). Additionally, Florida's long-arm statute must be strictly construed, and the burden of proving facts which

justify use of the statute is on the plaintiff. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir.1983). However, Florida courts are "deeply divided" on the issue of whether a tortious act committed outside the state resulting in injury in the state produces personal jurisdiction under § 48.193(1)(b). *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216. While mindful of this rift in the Florida circuits, the Eleventh Circuit has found that "jurisdiction under § 48.193(1)(b) '[is] not limited to a situation where an act in Florida cause[s] an injury in Florida but also ... reache[s] the situation where a foreign tortious act cause[s] injury in Florida.'" *Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*, 926 F.2d 1030 (11th Cir.1991)(quoting *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir.1976))(citing *Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1212, 1213 (5th Cir.1975)); *see also Posner*, 178 F.3d at 1216–17; *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir.1996).

■ The facts in this case mirror those presented to the Eleventh Circuit in *Robinson*. *See id.* at 255–56. In *Robinson*, a Florida plaintiff filed suit against Michigan attorneys for negligence and breach of contract. *See id.* The court found personal jurisdiction over defendants who had negligently drafted and reviewed will and trust documents which they intended to be administered in Florida under Florida law. *See id.* In the case at hand, Florida Plaintiffs allege professional negligence and breach of contract against Georgia Defendants. Further, Defendants entered into several written agreements purposefully drafted in accordance with Florida law. (Aff. of Patrick Dekle ¶ 11.) As in *Robinson*, the injury ultimately occurred in Florida when Plaintiffs suffered damages resulting from the alleged foreign malpractice. In light of the Eleventh Circuit's interpretation of § 48.193(1)(b) and the close relationship of the facts in this case to those in *Robinson*, Defendants' ar-

guments fail under the first prong of personal jurisdiction analysis.

■ Moreover, personal jurisdiction is proper under Fla. Stat. Ann. § 48.193(1)(a). This section exerts jurisdiction over individuals conducting business ventures within the state. As will be discussed in the following due process analysis, Defendants contracted under Florida law with Florida Plaintiffs and a Florida attorney. *See Polymers, Inc. v. Ultra Flo Filtration Systems, Inc.*, 33 F.Supp.2d 1008 (M.D.Fla.1998)(stating that a corporation may be subject to jurisdiction when it transacts business through its agents in the forum state, unless the agents are transacting business on their own account). In fact, Defendants instructed their Florida co-counsel to draft a contingency fee contract under Florida law. (Pls'.Resp.ex. 4.) Further, it is apparent that Defendants anticipated receiving some type of benefit for their representation of Plaintiffs. *See Bank of Wessington v. Winters Gov't Sec., Corp.*, 361 So.2d 757, 759–60 (Fla. 4th DCA 1978)(out-of-state bank which allegedly entered into oral contracts for the sale of securities was engaged in "a general course of business activity in the state for pecuniary benefit" thereby subjecting itself to jurisdiction under long-arm statute). Regardless of Defendants' physical location during this period, Defendants were clearly conducting business within Florida. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(standing for the proposition that personal jurisdiction is not dependent upon physical presence within the state).

In their supplementary filing, Plaintiffs attempt to add support to their argument by alleging that Defendants submitted themselves to the jurisdiction of Florida courts by soliciting services over the Internet. Plaintiffs assert that jurisdiction is proper based upon the "Keenan Law Firm's" Internet website that actively solicits prospective clients: "We would like to hear about your case. Please take the time to fill out the following form and one of our attorneys will review your material and respond quickly." IT–Professional, *The Keenan Law Firm: Ask Us About Your Case* (visited October 21, 1999) <http://www.keenan la wfirm.com/askabout.shtml>. The site also continuously posts its toll-free phone number. *See id.* (observation of the entire web-site). Moreover, the home-page of the Keenan web-site advertises the fact that the "Keenan Law Firm" has handled cases in over forty states. Moreover, it actively solicits attorneys to refer cases to them. *See* IT–Professional, *The Keenan Law Firm: Ask Us About Your Case* (visited October 21, 1999) <http://www.keenan lawfirm.com/referring.shtml>.

The Court recognizes Plaintiffs' authority reinforcing active Internet solicitation as a means of establishing personal jurisdiction. *See Thompson v. Handa–Lopez, Inc.*, 998 F.Supp. 738 (W.D.Tex.1998); *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997); *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996); *Bochan v. La Fontaine*, 68 F.Supp.2d 692 (E.D.Va.1999). However, Plaintiffs failed to assert that this web-site even existed at the time of Plaintiffs requesting the counsel of Defendants. Further, the Internet web-site itself does not offer a date of creation or posting. As the Court cannot decipher whether this Internet web-site existed at the time of the alleged malpractice and breach of contract, Plaintiffs arguments must fail in this respect.

■ Plaintiffs also maintain that jurisdiction is proper under Fla. Stat. Ann. § 48.193(f)(1). However, this Court found in *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F.Supp. 1058 (M.D.Fla.1993), that jurisdiction is not proper under section (1)(f) where financial harm is the sole injury. In the present case, Plaintiffs' right to potential future compensation is not sufficient to confer jurisdiction under section (1)(f). In light of the above finding that personal jurisdiction exists under § 48.193(1)(a), (b), the

Court must address the issues surrounding due process.

### B. Due Process

Defendants contend that even if jurisdiction is proper under the Florida long-arm statute, Plaintiffs' Complaint fails under the Due Process Clause of the Fourteenth Amendment. In short, Defendants state that the affidavits of Defendants Keenan, Allen, and Farley conclusively show they do not have sufficient minimal contacts with the state of Florida to submit them to the jurisdiction of Florida courts. Defendants argue that this is apparent because, during the entire representation of Plaintiffs, no Defendant traveled to Florida, made any appearance in Florida's courts, or conducted any investigation in Florida on behalf of Plaintiffs. Further, Defendants would be heavily burdened by defending a lawsuit in Florida because of their lack of resources in Florida. Finally, the interest of both the state of Florida and the Plaintiffs in adjudicating this dispute in Florida is minimal in light of Defendants' burden.

Plaintiffs respond that Defendants created sufficient contacts with Florida by representing Plaintiffs and engaging in a co-counsel relationship with Patrick Dekle, a Florida attorney. Moreover, Plaintiffs contend that Defendants purposefully availed themselves to the privilege of representing Florida residents and could have reasonably foreseen being haled into court in Florida by virtue of their representation of Plaintiffs and their active solicitation of clients in Florida.

■ The due process analysis required under the Fourteenth Amendment has been interpreted to require a two-part inquiry: (1) whether Defendants have established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction would offend "traditional notions of fair play and substantial justice." *Sculptchair,* 94 F.3d at 630–31 (quoting *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

#### 1. Minimum Contacts

■ The Eleventh Circuit utilizes a three part test for determining whether the minimum contacts requirement has been met:

> First, the contacts must be related to the plaintiff's cause of action ... Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [ ]. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Posner,* 178 F.3d at 1220 (quoting *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993)(internal quotations and punctuation omitted)).

■ In the present case, the Defendants' contacts with Florida arise out of their representation of Plaintiffs. In an attempt to secure an adequate representation of Plaintiffs, Defendants secured a co-counsel relationship with Florida attorney Patrick Dekle. Through numerous letters, a relationship was forged in which Dekle was "to handle the leg work and client contacts which needed to be performed in Florida in order to prepare [Plaintiffs'] case against the Georgia [DOT]." (Aff. of Patrick Dekle ¶ 12.) Essentially, Dekle was Defendants' co-counsel and general agent while performing legal representation for Defendants in the state of Florida. *See* Restatement (Second) of Agency §§ 1, 3, 7 (1958)(defining agency and the authority given to agents).

Perhaps more importantly, Defendants availed themselves of the benefits of Florida's laws by contracting with Dekle and Plaintiffs. During their representation of Plaintiffs, Defendants entered into a "Contingent Fee Contract" that involved Plaintiffs, Defendants, and Patrick Dekle. (Aff. of Patrick Dekle ¶ 11.) This Contract "was written in accordance with Florida law" at the request of Don Keenan and "The Keenan Law Firm." *Id.* at 13. In addition, "prior to entering into the 'Con-

tingent Fee Contract,' a copy of the 'Statement of Clients' Rights for Contingency Fees' was provided to the Kims so as to comply with the requirements of Florida law." *Id.* Undoubtedly, Defendants expected to gain some benefit from this venture, including a portion of any settlement or jury verdict. In light of their actions, Defendants could have reasonably expected to be hailed into the state of Florida in connection with their representation of Plaintiffs. As such, the Court finds that Defendants have sufficient minimal contacts with the state of Florida to establish personal jurisdiction.

### 2. Fair Play and Substantial Justice

█ The Court in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), set forth some relevant factors in determining fair play and substantial justice. Such factors include the "burden on the Defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Additionally, a court must consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.; see also Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir.1990).

█ Both Plaintiffs and the state of Florida have compelling interests in adjudicating this matter in Florida. *See Robinson*, 74 F.3d at 259 (stating "[t]he State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident[s] concerning assets located within its borders. The plaintiff, a Florida resident, has a great interest in the convenience of litigating in her home state.") Furthermore, the burden on the Defendants is not substantial. On their Internet website, Defendants advertise that they "have handled cases in over forty states." (Aff. of Mary Lecavalier ¶ 7.) In addition, Defendant Keenan has appeared pro hac vice eight times before Florida courts in the last twenty-five years (Aff. of

Don Keenan ¶ 9), and has given speeches on auto negligence to such out-of-state associations as The Florida Trial Lawyer Association. (Aff. of Mary Lecavalier ¶ 8.) Finally, the Court can find no interstate interests or social policies that will be hampered by finding jurisdiction in Florida. *Cf. Robinson*, 74 F.3d at 259–60. Therefore, it is found that jurisdiction in Florida comports with the due process requirement of fair play and substantial justice.

In light of above findings regarding Florida's long-arm statute and due process, Defendants' Motion to Dismiss for Lack of Jurisdiction over the Person is **denied.**

### III. Failure to State a Claim

Defendants' motion consists of a statement of the four elements of negligence required under Georgia law and the assertion that Plaintiffs' Complaint does not comply with Georgia law. The motion does not provide any analysis or otherwise establish exactly how Defendants believe the Complaint is insufficient. Plaintiffs agree with Defendants' statement of the law, but assert that the Complaint is sufficient.

█ To state a claim for professional negligence under Georgia law, a Complaint must include the following elements:

(1) A legal duty to conform to protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga.App. 27, 514 S.E.2d 836 (1999). A review of the four corners of the Complaint in the light most favorable to Plaintiffs establishes that Plaintiffs allege sufficient facts in support of their claim of professional negli-

gence to survive the Motion to Dismiss. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court finds that dismissal is not warranted because Plaintiffs have alleged a duty that was breached by the Defendants. (Compl. at 27, 33, 38.) Furthermore, the Court finds that Plaintiffs allege that this duty was breached and that injury/damages resulted from this breach. (Compl. at 30–33, 37–38.) As such, Defendants' Motion to Dismiss for Failure to State a Claim is **denied.**

II.  Motion to Strike

Defendants move to strike all references to punitive damages from the Complaint. Defendants assert that Fla. Stat. Ann. § 768.72 (West 1999) clearly provides that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Moreover, Defendants cite multiple cases as supporting the proposition that § 768.72 is substantive and therefore must be applied by federal district courts having diversity jurisdiction. *See generally, Mahon v. City of Largo, Florida,* 829 F.Supp. 377 (M.D.Fla.1993); *Marcus v. Carrasquillo,* 782 F.Supp. 593 (M.D.Fla.1992); *Lancer Arabians, Inc. v. Beech Aircraft Corp.,* 723 F.Supp. 1444 (M.D.Fla.1989); *Lewis v. Snap–On Tools Corp.,* 708 F.Supp. 1260 (M.D.Fla.1989). Plaintiffs do not address this issue in their response.

In the present case, the Court is exerting federal diversity jurisdiction over Defendants. As set forth by the Supreme Court in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), diversity jurisdiction mandates the application of state substantive law and federal procedural law. While the distinction between substantive and procedural law has been difficult to define, the current test for distinguishing between the two is recited in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See generally,*

*Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Byrd v. Blue Ridge Rural Electric Coop.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (illustrating the difficulty the Court has had in developing an effective rule for delineating substantive law from procedural law).

█ The Court in *Hanna* developed a two-part test for determining when state law should apply in federal diversity cases. Using this test, a court must determine whether the state law in question conflicts with the Federal Rules of Civil Procedure. If there is a conflict, "the court [is] instructed to apply the Federal rule, and can refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the [Rule's] Enabling Act nor constitutional restriction." *See Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1296 (11th Cir.1999) *reh'g granted.*

█ The federal district courts have reached different conclusions when applying the *Hanna* test to § 768.72. *See id.* However, earlier this year the Eleventh Circuit in *Cohen v. Office Depot, Inc.* determined that § 768.72 conflicts with Federal Rule of Civil Procedure 8(a)(3). *See id.* at 1299. Following *Hanna,* the court in *Cohen* concluded that "the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases." *Id.* at 1299; *accord Vacation Break U.S.A., Inc. v. Marketing Response Group & Laser Co., Inc.,* 189 F.R.D. 474, 477–78(M.D.Fla. 1999)(illustrating that this Court has already utilized the decision in *Cohen* ). However, rehearing has been granted. As a result, the finality of the *Cohen* decision is uncertain at this point.

This Court is bound by the precedent set forth by *Cohen* and must **deny** Defendants' Motion to Strike, but will grant Defendants leave to renew their Motion if

the Eleventh Circuit's rehearing of *Cohen* merits that renewal. Accordingly, it is

**ORDERED** that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Dkts.3, 8.) be **DENIED**; and Defendants' Motion to Dismiss for Failure to State a Cause of Action (Dkts.3, 8) be **DENIED**; and Defendants' Motion to Strike (Dkts.3, 8) be **DENIED**.