United States Court of Appeals,

Eleventh Circuit.

No. 94-5215.

Marilyn Z. ROBINSON, individually as Co-Personal Representative of the Estate of Marvin L. Robinson, as Co-Trustee of the Marvin L. Robinson Amended and Re-stated Trust and as Co-Trustee of the Marvin L. Robinson Marital Trust, Plaintiff-Appellee,

v.

GIARMARCO & BILL, P.C., Julius H. Giarmarco, David Hertzberg, Purdy Donovan and Beal, CPAs and S. Sam Tootalian, Defendants-Appellants.

Feb. 6, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-6211-CIV-JAG), Jose A. Gonzalez, Jr., Judge.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL[*], Senior District Judge.

DYER, Senior Circuit Judge:

Attorney Julius Giarmarco and his firm ("Giarmarco"), Attorney David Hertzberg ("Hertzberg"), S. Sam Tootalian ("Tootalian"), a partner in Purdy, Donovan & Beal CPAs, challenge the district court's finding of personal jurisdiction and proper venue. We affirm on both issues.

## I. BACKGROUND

A. Standard of Review

This appeal involves the denial of a motion to dismiss for lack of personal jurisdiction or for a change of venue. See Fed.R.Civ.P. 12(b). The district court predicated its decision on the complaint, defendants' affidavits, and Tootalian's deposition

---

[*]Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

testimony.  Exercising its discretion, the court did not hold an evidentiary hearing.  *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988).  The district court's refusal to change venue will only be disturbed for a clear abuse of discretion.  *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982).  We review denial of a motion to dismiss for lack of personal jurisdiction *de novo.*  *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990).  When no evidentiary hearing has been held, the standard by which to decide the issue of personal jurisdiction is clear:

> [T]he plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990) (citations omitted).

After reviewing the documents before the district court, we find no actual conflict in comparing the allegations on the face of the complaint with the defendants' affidavits and Tootalian's testimony.  The defendants have alleged facts that either harmonize with or are not directly addressed in the complaint.  To the extent that conflicting inferences can be drawn from the jurisdictional allegations asserted by both sides, we construe all reasonable inferences for the plaintiff in detailing the following relevant facts.

B. Facts

This case arises from estate planning services which the defendants rendered to Marvin Robinson ("Decedent"). The defendants reside and are licensed to practice only in Michigan. The Decedent resided in Michigan until 1980 when he and his wife moved to Florida.

Tootalian began providing accounting services to the Decedent in 1957 but it was not until 1980, after the Decedent had relocated to Florida, that Tootalian became involved with the Decedent's estate planning. He provided financial data and attended meetings with the Decedent's original tax attorney, who is not a party to this litigation. In 1984, the Decedent discharged his tax attorney and Tootalian contacted Hertzberg to assume representation of the Decedent in his estate planning matters.

In 1987 the Decedent requested that Hertzberg prepare a will and amend an existing trust agreement. By their terms, the will and the amended trust agreement were governed by and administered under Florida law. The will identified the Decedent as a Florida resident. Hertzberg delivered the documents to the Decedent in Florida, where they were executed.[1] While Hertzberg represented the Decedent, Tootalian's participation in the estate planning

---

[1]Hertzberg's affidavit states "[t]hat upon completing the drafting of decedent's trust and estate documents, I forwarded them to his accountant, S. Sam Tootalian, in Bloomfield, Michigan." It is unclear whether "estate documents" encompasses the will but, construing the vagueness in favor of the plaintiff, we presume that it does. It is obvious from the very documents that Hertzberg drafted that he knew his client lived in Florida. Presumably, he also knew that Tootalian would have to mail the documents to Florida. This is a reasonable inference because the complaint alleges, and the defendants do not dispute, that the documents were executed in Florida.

increased.  He met with the Decedent and Hertzberg and had many telephone conversations with the Decedent to discuss the estate.

Hertzberg announced his retirement from practice in 1989, at which time Tootalian introduced the Decedent to Giarmarco. Giarmarco represented the Decedent from at least January 1990 until November 1990, during which time he prepared a codicil to the will, which again identified the Decedent as a Florida resident and stated that Florida law would govern.  He also prepared two amendments to the trust agreement.  Giarmarco mailed these documents to the Decedent in Florida, where they were executed.

Several facts alleged in the complaint are uncontroverted. First, in September 1988 the Decedent employed Tootalian to review his will and trust documents "to project the testamentary disposition thereunder."  In that same month, the plaintiff alleges, Tootalian "prepared a memorandum to the Decedent, stating that he had reviewed the Trust and projected the distributions to Plaintiff and the Marital Trust as if neither were to bear any portion of the estate taxes."  The plaintiff further asserts that Tootalian prepared two memorandums in November 1989.  One was addressed to the Decedent advising him that the "Marital Trust and assets passing to Plaintiff would be free of estate taxes."  The second memorandum, addressed to Giarmarco, advised Giarmarco that the Decedent wanted him to review certain matters raised in the memorandum and to make certain changes to the trust documents. Finally, the plaintiff alleges that Tootalian's engagement continued until at least September 12, 1990, when he prepared a memorandum advising the Decedent that "his current trust documents

essentially provided for the distribution of his net assets to or for the benefit of Marilyn A. Robinson free of estate taxes."

Marvin Robinson died in 1992. His will was admitted to probate and the trust is administered in Broward County, Florida. Contrary to the Decedent's intentions, the trust and estate incurred a tax liability in excess of $850,000, which prompted the plaintiff to file suit for negligence and breach of contract. The defendants moved to dismiss for lack of personal jurisdiction or, alternatively, for a change of venue to Michigan. The district court determined that the facts alleged in the complaint supported jurisdiction pursuant to Florida Statutes § 48.193(1)(b) (1989) and the Due Process Clause of the Fourteenth Amendment. The court further found venue proper pursuant to 28 U.S.C. § 1391, and that a transfer would merely shift inconvenience from the defendants to the plaintiff. Defendants appeal that judgment.

## II. DISCUSSION

The analytical steps necessary to decide whether the district court has personal jurisdiction over the defendants are succinctly stated in *Madara:*

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, we consider the jurisdictional question under the state long-arm statute. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend "traditional notions of fair play and substantial justice.' " Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

916 F.2d at 1514 (citations omitted) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.

95 (1945)).

A. Long-Arm Statute

The Florida Long-Arm Statute permits a federal or state court to exercise personal jurisdiction over a nonresident defendant in certain enumerated situations. In pertinent part 48.193 provides:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the court of this state for any cause of action arising from the doing of any of the following acts:
>
> ....
>
> (b) Committing a tortious act within this state.

The reach of the statute is a question of Florida law. Thus, "federal courts are required to construe it as would the Florida Supreme Court." *Madara*, 916 F.2d at 1514.

Defendants argue that *Doe v. Thompson*, 620 So.2d 1004 (Fla.1993), and its progeny, demonstrate that an allegedly negligent act committed outside of the state resulting in injury in Florida is insufficient to confer personal jurisdiction over a nonresident defendant. The cases cited by defendants do not indicate such a trend,[2] nor is that the holding of *Doe. Silver,*

---

[2]The cases cited by Giarmarco and Hertzberg only involve intentional torts, and do not address the issue of foreign negligence resulting in damage to a Florida resident. *See, e.g., Silver v. Levinson,* 648 So.2d 240, 242 (Fla.Dist.Ct.App.1994) (personal jurisdiction found where plaintiff's allegations that nonresident defendant sent defamatory letter to recipient in Florida); *Allerton v. State Dep't of Ins.,* 635 So.2d 36, 39 (Fla.Dist.Ct.App.1994) (personal jurisdiction found where plaintiff alleged nonresident employee of securities firm participated in scheme to conceal true financial condition of a Florida insurer); *Pipkin v. Wiggins,* 526 So.2d 1002, 1003 (Fla.Dist.Ct.App.1988) (personal jurisdiction found where nonresident defendant intentionally interfered with business relationship in Florida); *Carida v. Holy Cross Hosp., Inc.,* 424 So.2d 849, 851 (Fla.Dist.Ct.App.1982) (personal jurisdiction

648 So.2d at 242 ("*Doe* only addressed the "corporate shield' doctrine:  section 48.193(1)(b) does not subject an employee to personal jurisdiction who has performed a negligent act outside of the state solely in his corporate capacity even if the injury occurs in Florida");  *Allerton,* 635 So.2d at 39 (In *Doe* "the supreme court agreed that, under the corporate shield doctrine, acts of a corporate employee performed in a corporate capacity do not form the basis for jurisdiction over corporate employees in their individual capacities").  The corporate shield doctrine has not been raised as a defense in this case.  Therefore, *Doe* and its progeny are inapposite.

This court previously determined that Florida law interpreting the reach of § 48.193(1)(b) was unclear.  *Sun Bank, N.A. v. E.F. Hutton & Co.,*  926 F.2d 1030, 1033 (11th Cir.1991). Although Florida courts have since fleshed out, at least to some extent, the parameters of the statute in the context of intentional torts, *see, e.g., Doe* and the cases cited in note 2, the scope of

---

found where plaintiff alleged nonresident doctor made libelous telephone calls to Florida residents).

Defendants further rely on *Phillips v. Orange Co.,* 522 So.2d 64 (Fla.Dist.Ct.App.1988) and *Kennedy v. Reed,* 533 So.2d 1200 (Fla.Dist.Ct.App.1988).  In *Phillips* the court found it lacked personal jurisdiction because the plaintiff suffered no injury in Florida.  522 So.2d at 66.  The lack of personal jurisdiction in *Kennedy* turned on the plaintiff's failure to allege specific acts that occurred in Florida tying the nonresident defendants to the forum, and failure to allege facts showing defendants had sufficient minimum contacts.  533 So.2d at 1201-02.  Allegations in the complaint that the alleged damage occurred in Florida, standing alone, did not confer jurisdiction in that case. *Id.*  Because the present case is factually distinct, we believe the Florida Supreme Court would find neither *Phillips* nor *Kennedy* controlling.

the statute when the plaintiff has alleged negligence remains unclear. We therefore follow the rule of *Sun Bank:* "jurisdiction under § 48.193(1)(b) "[is] not limited to a situation where an act in Florida cause[s] an injury in Florida but also ... reache[s] the situation where a foreign tortious act cause[s] injury in Florida.' " *Id.* (citing *Bangor Punta Operations, Inc. v. Universal Marine Co.,* 543 F.2d 1107, 1109 (5th Cir.1976)). The complaint sufficiently alleges that the attorneys negligently drafted and the accountant negligently reviewed the will and the trust documents, which they intended to be administered in Florida under Florida law. Their negligence has allegedly caused damage to an estate in Florida. Accordingly, we hold that the statute provides for personal jurisdiction over Giarmarco, Hertzberg and Tootalian.

B. Due Process

We engage in a two-prong inquiry to determine whether asserting personal jurisdiction over nonresident defendants comports with due process. First, we must decide whether each defendant has established "minimum contacts" with Florida. Second, we must determine whether the exercise of personal jurisdiction would offend " "traditional notions of fair play and substantial justice.' " *Madara,* 916 F.2d at 1515-16 (citing *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 392 (11th Cir.1988) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The due process principles applicable to specific personal jurisdiction are well stated in *Madara:*

1. Minimum contacts

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring in judgment). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton* [*v. Hustler Magazine, Inc.*] 465 U.S. [770] at 774, 104 S.Ct. [1473] at 1473 [79 L.Ed.2d 790 (1984) ], and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, reh'g denied, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478; or because of the unilateral activity of a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112,

107 S.Ct. 1026, 1032-33, 94 L.Ed.2d 92 (1987).

2. Fair Play and Substantial Justice

Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160). These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King,* 471 U.S. at 477-78, 105 S.Ct. at 2185. Conversely, these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id.* at 477, 105 S.Ct. at 2184.

916 F.2d at 1516-17 (footnote omitted).

With these principles in mind, we turn to the present case. The Decedent did not retain Hertzberg, Giarmarco, and Tootalian to merely perform ministerial tasks; rather he retained them to analyze federal and Florida law, to design a will and trust that would minimize taxes, and to advise him of the disposition of assets upon his death so that he could ensure the estate would pass as he intended. The attorneys and Tootalian rendered estate planning services to the Decedent knowing that he resided in Florida. The defendants all knew that the will would be probated, and the trust administered, in Florida. They all mailed correspondence to the Decedent in Florida.

Although Tootalian worked jointly with the tax attorneys, each defendant has established minimum contacts with the forum. Hertzberg and Giarmarco drafted documents intending for Florida law to govern the disposition of assets located in Florida. Tootalian provided various accounting services to the Decedent for over thirty years. Significantly, however, he only became involved in the estate planning after the Decedent moved to Florida in 1980, and his participation in the estate matters increased thereafter. Tootalian reviewed the estate documents, and wrote memorandums directed to the Decedent in Florida projecting the testamentary disposition of the estate, which, if done properly, required analysis of federal and state tax codes. Tootalian, by his own admission, also had many telephone conversations with the Decedent.[3] Clearly, if any one of the defendants was negligent, his conduct resulted in damage to an estate and trust in Florida.

The defendants are not being haled into a Florida court as the result of any random, fortuitous, or attenuated contacts, or because of any unilateral activity by the Decedent. The nature of the professional services rendered in this case was such that the defendants were fully aware that their actions or omissions would have a substantial effect in Florida. They should have reasonably anticipated the possibility of a suit arising from conduct directed towards the Florida Decedent. We conclude each defendant has

---

[3]By an order filed contemporaneously with this opinion we denied, on procedural grounds, plaintiff's motion for us to take judicial notice and supplement the record to show that Tootalian sought affirmative relief in the Florida court by filing a petition for fees and costs for services rendered to the Decedent's estate and trust.

purposefully directed his activities at the forum sufficient to establish minimum contacts.

The assertion of personal jurisdiction comports with fair play and substantial justice. The State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident, concerning assets located within its borders. The plaintiff, a Florida resident, has a great interest in the convenience of litigating in her home state. The burden on the defendants occasioned by litigating outside of Michigan is not slight, but modern methods of transportation and communication reduce this burden significantly. *See McGee,* 355 U.S. at 223, 78 S.Ct. at 201. Finally, we do not see any interest of the interstate judicial system in obtaining the most efficient resolution of controversies, or any interest of the states in furthering fundamental social policies that will be thwarted by our decision. On balance, these considerations do not defeat our conclusion to assert personal jurisdiction over the defendants.

## III. VENUE

A district court may transfer a case "for the convenience of the parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a) (1993). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell,* 650 F.2d at 616. The district court found that transferring the case to Michigan would merely shift inconvenience from the defendants to the plaintiff, implying that the plaintiff's choice of forum was not outweighed by other

factors.  We see no abuse of discretion in that decision.

IV. CONCLUSION

For the foregoing reasons, we hold that the defendants are subject to the personal jurisdiction of the district court and that the motion to change venue was properly denied.  AFFIRMED.