**BAKER & KERR, INC., Plaintiff,**

v.

**Michael P. BRENNAN, Defendant.**

**No. CIV. A. AW–98–3166.**

United States District Court,
D. Maryland.
Southern Division.

Nov. 17, 1998.

Howard Ross Feldman, Whiteford, Taylor & Preston, Baltimore, MD, for Plaintiff.

William H. Roberge, Jr., Selzer and Roberge, Gaithersburg, MD, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court is Defendant Michael P. Brennan's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court will deny Defendant's motion.

## BACKGROUND

This matter arises out of bookkeeping and accounting services performed by the defendant Michael Brennan ("Brennan") for the plaintiff Baker & Kerr, Inc. ("B & K"). B & K is a Maryland corporation, which maintains its principal place of business in Upper Marlboro, Maryland, and designs, produces, and installs cabinets. Brennan, who is a certified public accountant licensed in the Commonwealth of Pennsylvania, was retained by B & K from 1992 until 1995 for his professional assistance with various financial matters related to B & K's taxes, employee payroll, and other general accounting matters. Brennan prepared both the federal and Maryland state income tax returns for B & K. On each tax return, Brennan signed his name as the preparer. In addition, each return bears B & K's address in Upper Marlboro, Maryland. Brennan was also responsible for preparing both the federal and Maryland state income tax returns for B & K principals, David L. Baker and James W. Kerr, both of whom are Maryland residents. Brennan also signed as the preparer of these returns. Brennan prepared B & K's quarterly federal tax returns on its employees and its financial compilation reports, both of which Brennan either faxed or sent to B & K employees or principals in Maryland. In addition, Brennan frequently communicated with principals of B & K by phone, corre-

spondence, and fax over the course of three years. These communications involved the rendering of accounting, tax, and bookkeeping advice concerning B & K's business matters in Maryland. Finally, Brennan freely admits that he visited B & K's office in Maryland at least six times over the course of three years.

In its Complaint, B & K further alleges that it retained Brennan based on the fact that he held himself out as a Maryland licensed accountant, although they later discovered that he was not. From 1992, when he began providing services to B & K, Brennan's primary contact at B & K was William Mattern ("Mattern"). Mattern was an authorized agent of B & K who handled the corporation's financial affairs. However, unbeknownst to the members of B & K, Brennan was Mattern's brother-in-law. Brennan never disclosed this fact to B & K, despite his ethical obligation to reveal such possible conflicts of interest. Then, beginning in 1993, B & K alleges that Brennan and Mattern engaged in a "check kiting" scheme in which Mattern transferred money from B & K bank accounts to his personal accounts through a series of check transactions.[1] B & K claims that Brennan was aware of Mattern's alleged check kiting scheme, and in fact assisted Mattern by misrepresenting information on B & K's tax returns to cover up the effects of the scheme. As a result, B & K filed the instant action against Brennan alleging counts of accounting malpractice, breach of contract, and civil conspiracy. Brennan moved for dismissal for lack of personal jurisdiction and improper venue. The Court will address this motion below.

### DISCUSSION

#### A. Standard of Review for a Challenge to the Court's Personal Jurisdiction

█ Ultimately, the burden is on the plaintiff to prove that the Court may exercise jurisdiction over a nonresident defendant. However, when the Court rules on a motion to dismiss for lack of personal jurisdiction

without the benefit of an evidentiary hearing, the plaintiff's burden is " 'simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.' " *Owens–Illinois, Inc. v. Rapid American Corp.*, 124 F.3d 619, 628 (4th Cir.1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). The Court, however, must construe all relevant pleadings and inferences in favor of the plaintiff. *Id.*

█ The personal jurisdiction question normally involves a two-step analysis involving the forum state's long-arm statute and the Due Process Clause. *See id.* at 627. Md. Cts. & Jud. Proc.Code Ann. § 6–103 is Maryland's long-arm statute. Section 6–103(b)(4) permits a court to exercise jurisdiction over any person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." The purpose of the Maryland long-arm statute is to extend the scope of jurisdiction over nonresident defendants to the limits of the Fourteenth Amendment's due process clause as declared by the United States Supreme Court. *See Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). Therefore, the relevant inquiry for the pending motion is whether an exercise of the Court's jurisdiction is consistent with the Due Process Clause. *See Owens–Illinois*, 124 F.3d at 627–28.

█ Under the Fourteenth Amendment, Brennan is subject to this Court's jurisdiction if he had sufficient minimum and purposeful contacts with Maryland that gave rise to the suit. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Due process requires that Brennan's conduct and connec-

---

1. Essentially, Mattern was writing checks from his personal accounts to a B & K account, and then having a check made payable to him from a B & K account. B & K alleges that as Mattern wrote more checks off the B & K accounts, its accounts became overdrawn and ultimately led to B & K owing more than $730,000 for checks written on insufficient funds.

tion with Maryland must be of the character that he could have reasonably anticipated being haled into court here. *See Burger King,* 471 U.S. at 474; *World–Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In addition, this Court's exercise of personal jurisdiction over Brennan must not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316.

## B. *Analysis*

■ Here, there is no dispute that Brennan has no office or agent in Maryland, and that he is not licensed to practice accounting in Maryland. Instead, B & K argues that Brennan is subject to jurisdiction here because he purposefully directed his activities at Maryland through his rendering of substantial professional services for B & K, deriving significant monetary benefits from B & K, and engaging in tortious activities that ultimately injured residents in the state. Brennan, on the other hand, argues that he is not subject to Maryland's jurisdiction because he never performed any of his professional services in the state of Maryland, he is not licensed as an accountant in Maryland, and that any contact he had with B & K in Maryland was sporadic and insignificant.

The facts here are not unlike those in *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253 (11th Cir.1996). In *Robinson,* the plaintiff brought an action in the U.S. District Court for the Southern District of Florida against several nonresident attorneys and accountants for professional malpractice. Although the defendant attorneys and accountants resided and were licensed to practice only in Michigan, they still performed services for the plaintiff, who was a Florida resident. *Id.* at 255. As such, the defendants moved for dismissal on the grounds that the court lacked personal jurisdiction by claiming they did not have sufficient contacts with the state of Florida. The district court denied their motion, and the appeal followed.

As for the accountant, the *Robinson* court focused on the fact that his periodic correspondence and telephone calls to the plaintiff in Florida entailed substantive accounting and tax advice under both federal and Flori-

da law. *Id.* at 259. The defendant also reviewed plaintiff's estate documents, wrote memorandums directed at the plaintiff in Florida, and advised the plaintiff of the disposition of his assets in order to minimize his tax liabilities under both federal and Florida law. *Id.* In addition, the defendant accountant was well aware that the plaintiff resided in Florida, and that the basis of the services rendered and advice provided was for the benefit of the plaintiff in Florida. *Id.* Thus, the court concluded that based on the contacts and his purposefully directing his activities at the forum, the defendant should have reasonably anticipated being haled into court there. *Id.* at 260.

Just as the *Robinson* court found, this Court also recognizes that Brennan did not merely perform ministerial tasks for B & K. In fact, Brennan purposefully directed his activities to B & K in Maryland. From the beginning, Brennan knew that his services were being retained by a Maryland corporation for the benefit of that corporation's business activities in Maryland. Despite the performance of most of his services occurring in Pennsylvania, the quality and nature of those services were such that Brennan should have been aware of their substantial effect in Maryland. Finally, when construing the relevant pleadings in the light most favorable to B & K, the allegations of Brennan's involvement in the check kiting scheme provide an additional element that may be added into the minimum contacts calculus. As such, Brennan is "not being haled into a ... [Maryland] ... court as the result of any random, fortuitous, or attenuated contacts, or because of any unilateral activity" by B & K. *Id.*

Thus, this Court holds that B & K established that Brennan had sufficient minimum and purposeful contacts in Maryland so as to satisfy due process. Moreover, this assertion of personal jurisdiction comports with fair play and substantial justice, as the state of Maryland has a significant interest in protecting its citizens from such tortious activities. *See Burger King,* 471 U.S. at 477 (enumerating factors to assist in determining whether the assertion of personal jurisdiction comports with fair play and substantial jus-

tice). Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction will be denied.[2]

---

**2.** With regard to the portion of Brennan's motion alleging improper venue, the Court believes that if it may exercise personal jurisdiction over him, then venue in this Court is also appropriate under 28 U.S.C. § 1391(a).