**EYE CARE INTERNATIONAL, INC., Plaintiff,**

v.

**David UNDERHILL a/k/a R. David Underhill, Defendant.**

**No. 8:99–CV–1568–T–17E.**

United States District Court, M.D. Florida, Tampa Division.

Oct. 31, 2000.

Kevin Hackett O'Neill, Law Office of Kevin H. O'Neill, Tampa, FL, Robert F. Brown, Rendigs, Fry, Kiely & Dennis, L.L.P., Cincinnatti, OH, for Eye Care International, Inc., plaintiffs.

Karen E. Maller, Powell, Carney, Hayes, & Silverstein, P.A., St. Petersburg, FL, Barbara F. Florez, Gregory A. Ruehlmann, White, Getgey & Meyer Co., L.P.A., Cincinatti, OH, for David Underhill aka David R. Underhill, defendants.

## ORDER ON MOTION TO TRANSFER VENUE

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant, David Underhill's, Motion to Transfer Venue, (Dkt.28), and Plaintiff, Eye Care International, Inc.'s, response thereto, (Dkt.34).

### I. Factual Background

#### A. Relationship Between Plaintiff and Defendant

Plaintiff is a Delaware corporation, with its principal place of business in Tampa, Florida. (Dkt.1). Plaintiff operates a non-insurance, discount fee-for-service network which offers its members various discounts on services and goods within the ophthalmic / optometric industry. (Dkt.1). Defendant is a resident of Cincinnati, Ohio, and entered into an agency and employee relationship with Plaintiff. (Dkts.1, 3). Defendant initially participated in Plaintiff's non-insurance, discount fee-for-service network, from March of 1996, until February of 1998, as an independent agent of Plaintiff. (Dkts.1, 3). Defendant subsequently, upon agreement by both parties, entered into an employee relationship with Plaintiff in February of 1998, whereby Defendant was to devote one-hundred percent (100%) of his time to activities related to Plaintiff's business. (Dkts.1, 3). Defendant, thus, became an employee of Plaintiff and was paid regular compensation. (Dkts.1, 3).

The agency agreement provided that Defendant, as an agent of Plaintiff, was to sell and market Plaintiff's program, and was also required to provide Plaintiff with certain enrollment information formatted in accordance with Plaintiff's specifica-

tions, as well as the agency agreement between the parties. (Dkts.1, 3). The agency agreement was supplemented with subsequent mutual agreements, by and between the parties, regarding the nature and extent of compensation and the services to be rendered. (Dkts.1, 3). Plaintiff claims that they have rendered full compensation to Defendant and have otherwise performed all conditions precedent to the filing of this action. (Dkt.1). Defendant denies that he has been fully compensated by Plaintiff, and argues that Plaintiff has failed, and refused, to compensate Defendant for the commissions to which he is entitled. (Dkt.3).

### B. Plaintiff's Claims

In Count I, Plaintiff alleges that Defendant, as an inducement for entering into the agency and employment agreements with Plaintiff, falsely represented to Plaintiff that he had the requisite skills, knowledge, training, integrity, and prior experience to successfully undertake and implement the sale, marketing, and reporting necessarily associated with Plaintiff's program. (Dkt.1). Plaintiff argues that said representations by Defendant were knowingly false, and were submitted with the intent to induce reliance by Plaintiff. (Dkt.1). Plaintiff further contends that Plaintiff reasonably and detrimentally relied upon Defendant's false material representations, in that Plaintiff engaged and compensated Defendant as its agent and employee, pursuant to the terms of the aforementioned agreements between the parties. (Dkt.1). Plaintiff thereby claims, as a legal and proximate result of the foregoing, that Plaintiff has sustained damages as a result of the fraud in the inducement. (Dkt.1). Defendant collectively denies all of Plaintiff's allegations set forth herein. (Dkt.3).

As to Counts II and III respectively, Plaintiff also alleges that Defendant, through his acts or omissions, breached both the agency and employment contracts with Plaintiff, by: (1) failing to complete or achieve substantial completion of the entire work in a reasonable and timely manner; (2) failing to allocate or apply the sums received from Plaintiff to the work and/or obligations as specified in his agency and/or sub-agency agreement(s); (3) receiving and disbursing funds of Plaintiff and then failing to properly supervise, coordinate, organize, or otherwise administer the subject sales and marketing program in a reasonable manner to allow for the timely delivery and renewal of Plaintiff's memberships; (4) failing to account to Plaintiff for all additional work undertaken by Defendant and his sub-agents regarding the marketing and sale of Plaintiff's program in a good, timely, and professional manner in accordance with the agreement between the parties; (5) failing to comply with the specifications set forth in the Agreement; (6) failing to render labor, reporting, and/or services in a timely and professional manner; (7) failing to properly organize, coordinate, and/or administer the sub-agency sales agents and their agreements in a timely and efficient manner; and/or (8) failing to otherwise act with good faith and fair dealing concerning Defendant's obligations to Plaintiff under the respective Agreements. (Dkt.1). Plaintiff claims that, as a direct and proximate result of Defendant's breach(es) of contract, Plaintiff has sustained damages. (Dkt.1). Defendant collectively denies all of Plaintiff's allegations set forth herein. (Dkt.3).

Plaintiff further contends that the various transactions involving the payment and reimbursement related to said reported sales activities of Defendant constitute complicated business transactions. (Dkt.1). Plaintiff, thereby, in Count IV, demands an accounting from Defendant regarding all sums provided to Defendant and his sub-agents, in addition to all sales and membership renewals undertaken by Defendant and said sub-agents regarding Plaintiff's program. (Dkt.1). Defendant contends that Plaintiff's demand for an accounting does not call for a response. (Dkt.3).

## C. Defendant's Counterclaims

Defendant, in Count I, alleges that Plaintiff breached its agreement with Defendant by terminating Defendant without cause, and by failing and refusing to pay Defendant commissions to which he is entitled. (Dkt.3). Defendant claims, as a result of Plaintiff's breach of contract, that Defendant has sustained damages in an amount not less than one million ($1,000,000.00) dollars. (Dkt.3). In Count II, Defendant argues that Plaintiff, through its employees, officers, agents, and representatives, made numerous material misrepresentations of fact to Defendant regarding the compensation Defendant was to receive pursuant to the agreement with Plaintiff. (Dkt.3). Defendant further contends that the representations that Plaintiff made were false when they were made, and were known by Plaintiff to be false when made. (Dkt.3). Defendant claims that he justifiably relied upon said material misrepresentations of fact, and, as a result of this fraud, Defendant claims damages in an amount not less than one million ($1,000,000.00) dollars. (Dkt.3).

In Count III, Defendant alleges that Plaintiff, through its employees, officers, agents, and representatives, made numerous false statements of fact to Defendant for the purpose of inducing Defendant to continue his efforts of generating large volumes of business for Plaintiff. (Dkt.3). Defendant argues that he justifiable relied upon Plaintiff's false statements, and that as a result of Plaintiff's fraud in the inducement, Defendant has sustained damages in an amount not less than one million ($1,000,000.00) dollars. (Dkt.3). As to Count IV, Defendant alleges that Plaintiff collected monies on contracts generated by Defendant, which Defendant is entitled to, before and after Defendant's wrongful termination from employment with Plaintiff. (Dkt.3). Defendant contends that he has demanded payment of the commissions from Plaintiff, and that Plaintiff has refused to rightfully compensate Defendant for the commissions earned. (Dkt.3). As a result, Defendant demands an accounting by Plaintiff as to all monies collected by Plaintiff from contracts generated by Defendant, because Defendant contends that he is unable to determine, with specificity, the amount due to him by Plaintiff. (Dkt.3). Whereby, Defendant claims compensatory damages in an amount not less than one million ($1,000,000.00) dollars, as a result of withheld commissions. (Dkt.3).

## D. Jurisdiction and Venue

Plaintiff contends that this Court has subject matter jurisdiction pursuant to its broad powers to hear equity actions and actions at law, and pursuant to 28 U.S.C. § 1332(a)(1), in that the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of interests and costs. (Dkt.1). Plaintiff also argues that this Court may exercise *in personam* jurisdiction over Defendant, because Defendant was an agent and employee of Plaintiff, and Defendant received compensation from Plaintiff, by and through its principal place of business in Tampa, FL. (Dkt.1). Plaintiff further contends that this Court may exercise *in personam* jurisdiction over Defendant, because Plaintiff and Defendant entered into an agency agreement for the receipt and distribution of payments, enrollment fees, and commissions, by and through Plaintiff's principal offices in Tampa, FL. (Dkt.1). In support of this contention, Plaintiff also alleges that Defendant: attended business meetings and engaged in written and telephonic communications with Plaintiff's executives at its Tampa offices; has been continually conducting business in Florida, including the continuous offering of sales memberships in Plaintiff's program administered and directed through Plaintiff's offices in Tampa, FL; has been using Plaintiff's trade name or service mark in interstate commerce; has been continuously reporting to Plaintiff at its offices in Tampa, FL; and because Defendant has been doing business in Tampa, FL, and is, therefore, subject to personal jurisdiction pursuant to Florida Statute, § 48.193. (Dkt.1). Defendant collectively denies all of Plaintiff's

allegations set forth herein, and denies that this Court has either subject matter jurisdiction or *in personam* jurisdiction. (Dkt.3).

Plaintiff contends that venue is proper in this Court because Plaintiff has its principal place of business in Tampa, FL, Defendant conducts business here, and Defendant submitted claims and reports for payment to Plaintiff and received commissions and compensation from Plaintiff's offices in Tampa, FL. (Dkt.1). In further support of this contention, Plaintiff argues that Plaintiff and Defendant conducted their agency relationship, and pursued their business and commercial relationship, in Tampa, FL, and that said agency and employment agreements between Plaintiff and Defendant involved the sale and marketing of Plaintiff's program which is administered through its principal place of business in Tampa, FL. (Dkt.1). Defendant also denies that venue is proper in this Court. (Dkt.3).

## II. *Standard of Review*

A motion to transfer venue is governed by 28 U.S.C. § 1404(a). Section 1404(a) is the statutory codification of the common law doctrine of forum non conveniens. *See Tampa Bay Storm v. Arena Football League, Inc.,* 932 F.Supp. 281, 282 (M.D.Fla.1996). The section states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

■ Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any district where it could have been brought for: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *See Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir.1996). The Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions, stating that "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that

it is clearly outweighed by other considerations." *See id.* (quoting *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982) (internal quotations omitted)).

■ The standard for transfer under § 1404(a) leaves much to the broad discretion of the trial court. *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir.1977), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977). "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *See Tampa Bay Storm,* 932 F.Supp. at 282 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964)). The movant has the burden of persuading the trial court that the transfer is appropriate and should be granted. *See id.* Unless the balance strongly favors defendant, plaintiff's choice of forum will rarely be disturbed. *See Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 341 (8th Cir. 1983).

In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show that the balance of convenience is "strongly in favor" of the transfer. *See Tampa Bay Storm,* 932 F.Supp. at 282. The issue in this Motion is whether Plaintiff's choice of the Middle District of Florida as the forum of this action, creates problems of convenience for Defendant and his witnesses, "of such a substantial nature that transfer is appropriate in the interest of justice." *See id.*

■ The decision whether to transfer venue is within the discretion of the trial court, and each case should be decided on its particular facts. *See Brown v. Connecticut Gen. Life Ins. Co.,* 934 F.2d 1193, 1197 (11th Cir.1991) (citing *Howell,* 650 F.2d at 616). In answering this question, this Court must consider the following factors: Plaintiff's initial choice of forum, con-

venience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

### III. *Analysis*

Defendant seeks the transfer of this case from the Middle District of Florida to the Southern District of Ohio. Defendant bases the Motion to Transfer Venue on the grounds that Ohio is the proper forum for resolution of this action, that Ohio is the best forum for the convenience of the parties and the majority of the witnesses, and that the interests of justice would only be served by the transfer to the Southern District of Ohio. (Dkt.28).

### A. Jurisdiction in the Southern District of Ohio

The threshold question is whether this civil case may have been brought in the desired district of transfer, Southern District of Ohio. *See Garay v. BRK Electronics,* 755 F.Supp. 1010 (M.D.Fla.1991). The courts will not disturb a plaintiff's selected venue merely to shift inconveniences between the parties. *See id.* at 1011.

In the present case, the jurisdiction of the Middle District of Florida is based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Based on the allegations of the Complaint, the fact that Defendant resides in Cincinnati, Ohio, and the fact that virtually all of the customers who purchased Plaintiff's vision care plans, as a result of Defendant's efforts, reside in Ohio, lead this Court to find that the action could have been brought in Ohio, as well as in Florida. Hence, the initial requirement of being transferred to a district where the cause could have originally been brought, is met.

### B. Convenience of the Parties

The next factor the Court must consider is whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice. "In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative." *See Bolesky v. Banc One Corp.,* 1996 WL 686797 at *4 (M.D.Fla. 1996) (quoting *NTN Bearing Corp. v. Charles E. Scott, Inc.,* 557 F.Supp. 1273, 1279 (N.D.Ill.1983)).

Defendant asserts that the following factors are determinative of its motion to transfer this case to the Southern District of Ohio:

(a) the United States District Court for the Southern District of Ohio has subject matter jurisdiction over the claims involved, and also has *in personam* jurisdiction over Defendant, and would have *in personam* jurisdiction over Plaintiff, because Plaintiff authorized Defendant to act as its agent, and later as an employee, in selling and marketing its program in Cincinnati, Ohio;

(b) Defendant filed a similar action against Plaintiff in Ohio on July 23, 1999, and that action is currently pending in the United States District Court for the Southern District of Ohio, before the Honorable Sandra Beckwith;

(c) Plaintiff filed a motion with the Court in the Southern District of Ohio to transfer Defendant's case to Florida, and the motion was denied by Judge Beckwith in an order dated January 14, 2000;

(d) the activities which gave rise to the disputes between the parties to this action took place primarily in Ohio;

(e) Plaintiff's dealings with Defendant were based in Cincinnati, Ohio;

(f) Plaintiff solicited Defendant to join its sales force in Ohio;

(g) the initial sales representative agreement at issue was signed by Defendant in Ohio;

(h) Defendant maintained his office in his home in Cincinnati, Ohio, and held himself out as a representative of Plaintiff located in Cincinnati, Ohio;

(i) Plaintiff's principals routinely traveled to Ohio to conduct business with Defendant;

(j) Defendant's list of anticipated witnesses all reside in Ohio, with the exceptions of some of Plaintiff's executives, who reside in Florida;

(k) virtually all of the customers who purchased Plaintiff's vision care plans, as a result of Defendant's efforts, are located in Cincinnati, Ohio; and

(*l*) the financial considerations weigh in favor of Defendant, and Plaintiff is presumably continuing to send its corporate officers to Ohio to regularly monitor and assist its current sales representatives working in the Cincinnati, Ohio area. (Dkt.28).

In response, Plaintiff asserts the following factors in opposition to transfer, and in support of maintaining its choice of forum:

(a) the United States District Court for the Middle District of Florida has subject matter jurisdiction over the claims involved, and also has *in personam* jurisdiction over Defendant;

(b) Plaintiff's principal place of business is in Tampa, FL;

(c) all books and records of Plaintiff are located in Tampa, FL;

(d) Plaintiff's corporate officers who will be testifying are located in Tampa, FL;

(e) Defendant conducted business in Florida by submitting Defendant's reports for payment from Plaintiff's offices in Tampa, FL;

(f) Defendant received commissions and compensation, which underlie this litigation, in Tampa, FL;

(g) Defendant participated in business meetings with Plaintiff's officers in Tampa, FL;

(h) Defendant has been using Plaintiff's trade name and service mark in interstate commerce; and

(i) upon the alleged breach of contract by Defendant, and the subsequent damage that Plaintiff sustained as a result, Defendant now seeks to impose further hardship on Plaintiff by requiring that Plaintiff haul its business records, witnesses, and corporate officers to Cincinnati, Ohio, for Defendant's litigation convenience. (Dkt.34).

■ The criteria for transfer of venue under § 1404(a) essentially concerns the convenience of the parties and witnesses, and the interests of justice. *See Robinson,* 74 F.3d at 260. This Court gives great weight to the convenience of parties and witnesses. However, after weighing the convenience of the parties and witnesses, this Court finds that there is no clear difference in convenience of witnesses and parties. More witnesses, perhaps, live in Ohio, but several key witnesses do not. Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain. *See Blumenthal v. Management Assistance, Inc.,* 480 F.Supp. 470 (D.C.Ill.1979). The Court concludes that the convenience of parties and the convenience of witnesses weigh against transfer of venue to the Southern District of Ohio.

In addition, with respect to the conveniences of parties and witnesses, Judge Beckwith noted in her January 14, 2000, order, that, "[l]itigation in this district is no more or less inconvenient for Defendant and its witnesses than litigating in the Middle District of Florida would be for Plaintiff and his witnesses." (Dkt. 28, exhibit A). It is necessary, however, to note that Judge Beckwith's reference to Defendant in the previous quote refers to Plaintiff in the action pending before this Court, and that Judge Beckwith's reference to Plaintiff in the same quote refers to Defendant in the present suit before this Court. This is because the case that is pending in the Southern District of Ohio was brought by the party who is Defendant in the case before this Court, thereby making Defendant from the present case the Plaintiff in the suit pending in Ohio.

Plaintiff maintains that the interests of justice would not be served by transferring venue to Ohio. (Dkt.34). Plaintiff timely filed suit against Defendant with this Court on July 7, 1999, and Defendant timely filed suit against Plaintiff in Ohio on July 23, 1999. (Dkts.1, 28). Since Plaintiff filed its action against Defendant prior to Defendant's subsequent action in Ohio, the interests of justice require deference to be given to Plaintiff's choice of forum in the Middle District of Florida.

### C. Location of Relevant Documents and Other Sources of Proof

 In addition to jurisdiction and convenience of the parties, relative ease of access to the sources of proof is an important consideration in determining a motion to transfer venue. *See Cortez v. First City National Bank of Houston*, 735 F.Supp. 1021, 1024 (M.D.Fla.1990). The location of relevant documentation and records regarding Plaintiff's claims is important. *See id.*

Plaintiff alleges that all of the books and records held by Plaintiff are located in its principal offices in Tampa, FL. (Dkt. 34, exhibit A). These company records will necessarily be used as evidence during the litigation of the claims asserted herein. To require Plaintiff to haul these books and records to Cincinnati, Ohio, in order to satisfy Defendant would be costly and burdensome to Plaintiff, who presumably filed suit against Defendant in order to have freedom in the choice of forum. As such, this Court finds that Defendant's motion to transfer venue must be denied.

### IV. *Conclusion*

This Court finds that the United States District Court for the Southern District of Ohio could have jurisdiction, based on diversity of citizenship, over the claims asserted herein, and that suit could have properly been brought in Ohio, as well as in Florida. However, in order to overcome the presumption in favor of the Plaintiff's choice of forum, Defendant must show that the balance of conveniences is "strongly in favor" of the transfer. *See Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839; *see also Bolesky*, 1996 WL 686797 at *5. This Court finds that Defendant has not shown the balance of convenience to be strongly in favor of the transfer of venue to Ohio. In addition, this Court finds that the interests of justice would best be served by resolution of the claims asserted herein by this Court, Plaintiff's original choice of forum. In light of the great weight given to Plaintiff's choice of forum, this case does not warrant transfer to the Southern District of Ohio. Therefore, this Court finds that denial of Defendant's motion to transfer venue is appropriate. Accordingly, it is:

**ORDERED** that Defendant, David Underhill's, Motion to Transfer Venue, (Dkt.28), be **DENIED**.