POLEN, C.J.
Marilyn Z. Robinson timely appeals the probate court’s Order on her petition for attorneys’ fees and respondent’s motion regarding entitlement to settlement proceeds. We note the underlying litigation has been ongoing since 1992 and this is the fifth time matters concerning this litigation have been brought before this court.[1] Marilyn raises four points on appeal, all of which we find unpersuasive. We adopt the findings of Judge Speiser’s comprehensive and thorough order, and accordingly, affirm.
We have discussed the history of this protracted litigation in our earlier opinions and find it only necessary to reiterate those particulars we find relevant for the purposes of this appeal. Marvin Robinson died testate in March of 1992. Marvin was survived by his widow (Marilyn), two daughters from a prior marriage (Jill and Shirley), and his brother (David). Administration of his estate commenced shortly following his death, with Marilyn and David named as co-personal representatives. Marvin’s will contained a pour over provision, with its remainder to pour over into the Marvin Robinson Trust (“Main Trust”). The Main Trust was funded with approximately $9,000,000.00 during Marvin’s lifetime and became irrevocable upon his death.
According to Marvin’s will, all estate taxes, whether or not based on property passing under the will, were to be paid from the residuary estate without appor *96 tionment. However, Article “IV B” of the Main Trust directed all estate taxes to be paid from the trust principal, with any sums passed to the trust from the estate divided pursuant to the trust’s terms. The trust further provided for the creation of three subtrusts: a trust for the benefit of Marilyn (“Marital Trust”), a trust for the benefit of his daughter Jill (“Jill Trust”), and a trust for the benefit of Shirley (“Shirley Trust”). As defined in Article “IV E,” the Marital Trust was to consist of one-third (1/3) of the net trust estate after liabilities and after payment of taxes as defined in Article “IV B.” As defined in Article “IV I,” the Shirley Trust, in relevant part, was to consist of all remaining trust assets after payment of taxes as defined in Article “IV B,” the funding of the Marital Trust as defined in Article “IV E,” and the funding of the Jill Trust with a fixed dollar amount. Marilyn, David, and Marvin’s accountant, Sam Tootalian, were named co-trustees of the Main Trust and all subtrusts. Tootalian resigned leaving Marilyn and David as co-trustees.
Marilyn initiated an action to reform the will and trust, based on the conflicting provisions regarding the payment of estate taxes. She alleged she had discovered correspondence between Marvin and Too-talian, evincing that Marvin’s intent had been to fund the Marital Trust with one-third of the residuary estate calculated before the payment of taxes. Accordingly, she contended all estate taxes were to be charged against the Shirley Trust, the residual beneficiary of the Main Trust.
Marilyn’s attempts to reform the will and trust followed a meandering course. Initially the trial court held the provisions of the will and the trust conflicted with each other, and that clear and convincing evidence established Marvin’s intention to have Shirley’s Trust bear the impact of all estate taxes. The court did not rule on Marilyn’s claim for reformation of the trust at that time. We reversed the judgment, holding absent an internal ambiguity in the trust instrument itself, the evidence supporting the court’s finding of intent was inadmissible. Robinson, 676 So.2d 511. Marilyn then petitioned the trial court to rule on her count to reform the trust. The court ruled the trust could be reformed after Marvin’s death where evidence of a unilateral mistake existed, and ordered the trust reformed to conform to Marvin’s previously established intent. We affirmed, noting the issue before the court, the reformation of an inter vivos trust after the death of the settlor, was a case of first impression. In re Estate of Robinson, 720 So.2d 540. All litigation regarding the reformation action became final on or around March 10, 1999, when review was denied by the Florida Supreme Court. In re Estate of Robinson, 729 So.2d 391 (Fla.1999).
Meanwhile, Marilyn additionally sought to bring an action against Tootalian and the drafting attorneys, alleging their negligent drafting had caused the estate to pay excess taxes in contravention of the marital deduction as intended by Marvin. David, as co-personal representative and co-trustee, opposed Marilyn, which led her to file an emergency motion for court authorization to pursue a malpractice action on behalf of the Estate and the Main Trust. On January 31, 1994, the probate court entered an Order authorizing Marilyn to file and serve the malpractice action against Tootalian and the drafting attorneys on behalf of the Estate and Main Trust. The Order expressly provided that, “no further action is to be taken by Marilyn on behalf of the Estate or Trust in such action without order of court.” The malpractice action was subsequently removed to federal court on diversity grounds. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996). In *97 September of 1995, Tootalian filed a fee petition on David and Marilyn, in their capacities as co-personal representatives and co-trustees, seeking approximately $200,000 as reimbursement for services rendered to the Estate and Trust. Marilyn wished to oppose this petition, David disagreed, and Marilyn filed another emergency motion for authorization to oppose the fee petition. The probate court entered an Order authorizing Marilyn to oppose the fee petition, tracking the same language of the January 1994 Authorization Order.
In March of 1997, subsequent to the probate court’s Order allowing reformation of the trust, Marilyn filed a petition on the Shirley Trust, seeking reimbursement of her attorneys’ fees. The petition sought fees incurred in the two actions against Tootalian and the actions to reform the trust, in addition to fees sought for having David removed as co-trustee of the Main Trust back in 1996, and efforts to effectuate a refund of the excess estate taxes paid. The probate court awarded Marilyn’s attorneys their fees and costs already incurred in connection with the reformation action, charging such award against the Main Trust. However, the court continued all of the other fees sought, pending a final determination regarding the reformation action, which at the time was pending on appeal.
Upon the finality of the reformation action, the probate court set a hearing for October 11, 1999, on the pending claims from Marilyn’s 1997 fee petition which had previously been continued. Unbeknownst to Shirley, or any of the other beneficiaries of the Main Trust, Marilyn had settled both claims against Tootalian, in April and June of 1999. Acting pursuant to Marilyn’s petition for instructions, the probate court had entered an Order on June 16, 1999, directing the distribution of the settlement proceeds as follows: $250,000 to Marilyn individually, $800,000 to the Marital Trust, and $75,000 to Marilyn’s attorneys. All settlements were confidential and Marilyn refused to divulge the terms of any settlement to Shirley or her representatives. Thereafter, in September 1999, Shirley, unaware of the June 16 Order, filed a motion opposing court authorization of any joint stipulation of settlement and requested the court to distribute any settlement proceeds to the Main Trust.
Five hearings were held, between October of 1999 and" March, 2000, regarding Marilyn’s petition for fees and Shirley’s motion regarding distribution of the settlement proceeds. At the second hearing, November 24, the presiding judge learned about the June 16 Order (which had been obtained without notice to Shirley) for the first time, and upon ore tenus motion vacated that Order. On September 8, 2000, the probate court entered its Final Order awarding Marilyn’s attorneys a total of $423,815 in fees and costs, of which $48,353 was chargeable directly against the Shirley Trust, and $375,262 was chargeable against the Main Trust. The court also ruled that all settlement proceeds, less the $75,000 previously distributed to the attorneys pursuant to a 1995 Order of the probate court, belonged to the Main Trust.
Marilyn contends the probate court erred in directing the distribution of the settlement proceeds to the Main Trust, since the Shirley Trust and its representatives had initially opposed the actions (malpractice and fee counterclaim) which ultimately were settled. We disagree, and respectfully adopt Judge Speiser’s well-founded factual and legal findings in this regard. We note Marilyn had been authorized to pursue such actions only on behalf of the Main Trust and Estate, and lacked authority to broker a settlement on behalf of the Marital Trust or herself individually. *98 § 737.403(2), Fla. Stat. (1997). We also find Marilyn’s contention that the Shirley Trust effectually “waived” its entitlement to any settlement proceeds through the previous opposition of its representative (David) to the initiation of those actions unpersuasive. As noted by Judge Speiser, David was removed as co-trustee of the Main Trust due to irreconcilable conflict between himself and Marilyn in June of 1996; removal was the penalty for his conduct, not a forfeiture of the Shirley Trust of its rights under the Main Trust. We find Marilyn’s contention that she was the only party “harmed” by the alleged malpractice without merit. All excess taxes had been paid by the Main Trust, and any damage to the Marital Trust in the form of excess taxes paid, was rectified by the reformation action and correlative estate tax refund.
We also find no error in the probate court’s allocation of the burden of Marilyn’s attorneys’ fees primarily against the Main Trust, where Marilyn had sought to charge 100% of those fees against the Shirley Trust under section 733.106(4), Florida Statutes. We note the probate court misconstrued our previous holding in Nalls v. Millender, 721 So.2d 426 (Fla. 4th DCA 1998), whereby we held Florida Statutes 733.106(3), which authorizes an award of attorneys’ fees “rendered to an estate,” does not apply where services are rendered to a trust. In Nalls, a beneficiary of an inter vivos trust brought an action against the trustee of the inter vivos trust, alleging the trustee had breached her fiduciary duty. The beneficiary sought repayment of her attorneys’ fee under section 733.106(3). We held the beneficiary’s fees were not recoverable under section 733.106(3), since the underlying litigation had involved a trust, not an estate. Id. at 427. We hold the case sub judice is distinguishable, where services are rendered in the administration of an estate where a trust is a beneficiary. Here, Marilyn’s attorneys’ fees were incurred for the benefit of the Estate and the Main Trust, and we hold the probate court was free to apportion the fee award in its discretion. § 733.106(4), Fla. Stat. (1997).
Notwithstanding, we hold the probate court did not abuse its discretion in its allocation of the burden of the fee award against the Main Trust as an administrative expense, where its Final Order expressly held there was no factual basis to assess 100% of Marilyn’s attorneys’ fees against the Shirley Trust. We note the probate court assessed a portion of the fees directly against the Shirley Trust, as a matter of equity, finding its opposition to the malpractice actions had resulted in an overall increase in attorneys’ fees. We find Marilyn’s further contention that the Shirley Trust should be responsible for all fees incurred as a result of its consistent adverse positions unpersuasive. Shirley’s opposition to the reformation action was surely not in “bad faith,” where Marilyn had attempted a legal action which this court found was a case of first impression. Additionally, we find Shirley’s opposition to Marilyn’s distribution of the settlement proceeds was necessary and proper, where Marilyn had sought a course of action detrimental to the Shirley Trust and the Main Trust, in contravention of her fiduciary duty.
We find Marilyn’s additional points on appeal unpersuasive and adopt the additional findings of the probate court.
AFFIRMED.
KLEIN and STEVENSON, JJ., concur.

. Robinson v. Robinson, 651 So.2d 1271 (Fla. 4th DCA 1995); Robinson v. Robinson, 676 So.2d 511 (Fla. 4th DCA 1996); Robinson v. Tootalian, 691 So.2d 52 (Fla. 4th DCA 1997); In re Estate of Robinson, 720 So.2d 540 (Fla. 4th DCA 1998).